IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WEINFUSE LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:23-CV-02595-E |
| ENDUE INC, | § § § | |
| Defendant. | § § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Endue Inc.'s Motion to Dismiss, which seeks to dismiss all claims Plaintiff WeInfuse LLC asserts. (ECF No. 15). Having carefully considered the Motion to Dismiss; the Parties' briefing; appendices; and the applicable law, for reasons that follow, the Court GRANTS Endue's Motion to Dismiss. The Court further DENIES WeInfuse's embedded motion for leave to amend its complaint.

I.   BACKGROUND

A.   **Dispute and the Parties**

This case arises from a dispute involving WeInfuse's acclaimed "confidential and propriety information" and Endue's allegedly "misleading statements made into the marketplace." (ECF No. 10 at 7). It is undisputed that WeInfuse is a Texas limited liability company (i) with an office in Dallas and (ii) with its principal place of business in Texas. (ECF No. 10 at 1). It is undisputed that Endue is a Delaware corporation with its principal place of business in Maine. (ECF No. 10 at 1); (ECF No. 15 at 17). As amended, WeInfuse pleads as to its software and efforts to maintain its acclaimed confidential and proprietary information as follows:

> [WeInfuse] specializes in providing software-as-a-service to medical infusion centers.[] WeInfuse grants licenses for its proprietary software (referred to as the "Software") to clients, enabling the streamlined administration of infusions to patients.
> . . . .
> The Software is WeInfuse's intellectual property, and it enjoys copyright and trade secret protection as well as other legal protections. The copyright to the Software has been registered with the United States Copyright Office under Registration Number TXu002191941.
> The Software is only accessible to authorized clients who sign the WEINFUSE SOFTWARE LICENSE AGREEMENT (the "License Agreement") and a Business Associate Agreement ("BAA").
> . . . .
> WeInfuse's secured Software platform stores and maintains confidential and proprietary information. By way of illustration, clients use WeInfuse's Software to:
>> i. Maintain patient information, including confidential medical information;
>> ii. Upload and access patient related data, including real-time progress reports, patient intake forms, treatment notes, and insurance information;
>> iii. Maintain historical billing, pricing, invoicing, and accounts receivable data for all patients;
>> iv. Monitor inventory and vial scanning; and
>> v. Assist with chair-optimized patient scheduling and patient engagement.
>
> . . . In addition to utilizing a secure portal that is password protected and only accessible via login credentials belonging to license holders, WeInfuse requires its license holders to abide by the License Agreement that specifically prohibit the use or disclosure of WeInfuse's confidential proprietary information other than in connection with authorized uses for legitimate business purposes.

(ECF No. 10 at 2-4) (footnote omitted). As to Endue, WeInfuse pleads:

> In some of its pitch slides, Endue has used edited screenshot images of WeInfuse's Software (the "Screenshots"). These Screenshots portray an interface of WeInfuse's software with redacted sections concealing private and protected patient information.
>
> [] Because the Screenshots represent displays of the Software accessible solely to licensed users with passwords, Endue's possession of these materials demonstrates that Endue acquired them, without WeInfuse's authorization, from a client who violated the terms of the License Agreement and/or User Agreement. These slides explicitly reveal that Endue, an unauthorized entity, breached the authorized access to such data and may have accessed and viewed confidential, protected health information in the process.
>
> [] To make matters even worse, in the slides and marketing materials, Endue made false, misleading, and damaging statements about WeInfuse. The slides show anonymous quotations, which are worded as if to convey that they came from

clients of WeInfuse but give no attribution or context to the statements. An example of this is depicted below for the Court's reference.

> WeInfuse is primary vertical competitor
> "Don't do anything well, but no alternative"
> Others we rarely encounter

17. One slide illustrates a chart comparing WeInfuse's federally registered logo alongside one-to-three-star symbols across different categories ("Intake & Processing," "Financial Support," etc.), contrasting it with Endue, which displays three to four stars in those same categories. This graphic, shown below, suggests that the stars signify survey or poll outcomes, yet fails to provide evidence for the alleged "ratings." These seem to be entirely concocted by Endue, aiming to deceive investors, customers, clients, and other stakeholders in the infusion industry who may view these materials.



(ECF No. 10 at 4-5). WeInfuse pleads that it sent Endue a cease and desist letter on October 11, 2023, but that "Endue fail[ed] to provide a substantive response." (ECF No. 10 at 5).

B. Procedural History

This is not the first proceeding involving this dispute between WeInfuse and Endue. (ECF No. 10 at 5-7). After sending its October 11, 2023 cease and desist letter, WeInfuse explains that

it brought a Texas Rule of Civil Procedure 202 proceeding against Endue in "effort to obtain relevant documents and testimony." (ECF No. 10 at 6).[1] It is undisputed that WeInfuse dismissed this Rule 202 Proceeding. (ECF No. 34 at 13).

Nevertheless, on November 22, 2023, WeInfuse initiated this litigation. As amended, WeInfuse asserts claims against Endue for (i) misappropriation of trade secrets and confidential information under the Defend Trade Secrets Act (DTSA) and the Texas Uniform Trade Secrets Act (TUTSA); (ii) tortious interference with existing contracts; (iii) business disparagement; (iv) unfair competition; and (v) copyright infringement. (ECF No. 10 at 7-15). On February 12, 2024, Endue filed a motion to dismiss—which seeks to dismiss all claims under Federal Rule of Civil Procedure 12—arguing (i) the Court lacks personal jurisdiction over Endue and (ii) WeInfuse has failed to state a claim upon which relief can be granted. (ECF No. 15); *see* Fed. R. Civ. P. 12(b)(2), (6). WeInfuse has responded and included an embedded motion for leave to further amend its complaint. (ECF No. 34). Endue has replied. (ECF No. 43). Having been fully briefed, the Motion to Dismiss is ripe for adjudication.

## II.   LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) provides: "a party may assert the following defenses by motion: . . . (2) lack of personal jurisdiction[.]" Fed. R. Civ. P. 12(b)(2). When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's personal jurisdiction over the defendant but need only make a *prima facie* case supporting personal jurisdiction at the Rule 12(b)(2) stage. *In*

---

[1] Texas Rule of Civil Procedure 202 generally permits an "an order authorizing the taking of a deposition on oral examination or written questions either: (a) to perpetuate or obtain the person's own testimony or that of any other person for use in an anticipated suit; or (b) to investigate a potential claim or suit." Tex. R. Civ. P. 202.1

*re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018) (citations omitted). In ruling on Rule 12(b)(2) motions, courts must accept a plaintiff's uncontroverted, nonconclusory factual allegations as true and resolve all controverted allegations in the plaintiff's favor. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (citation omitted). However, courts need not credit conclusory allegations, even if uncontroverted, in ruling on a motion to dismiss for lack of personal jurisdiction. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (citations omitted). Courts may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, and other recognized methods of discovery. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citations omitted). A court must address a jurisdictional challenge before addressing a challenge on the merits under Rule 12(b)(6). *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (explaining in a case involving jurisdictional challenge under Rule 12(b)(1) that "the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."); *see, e.g.*, *McCasland v. City of Castroville*, 478 Fed. Appx. 860 (5th Cir. 2012) (explaining, *inter alia*, in a case involving jurisdictional challenge under Rule 12(b)(1) that "courts must consider the jurisdictional challenge first.") (not designated for publication).

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. In reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). The Court will not accept as true "legal conclusions couched as factual allegations." *Iqbal*, 556 U.S. at 678. "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

### III.   PERSONAL JURISDICTION

"There is personal jurisdiction if the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston*, 523 F.3d at 609 (citing *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)). Due process requires that the defendant have "minimum contacts" with the forum state (*i.e.*, that the defendant has purposely availed himself of the privilege of conducting activities within the forum state) and that exercising

jurisdiction is consistent with "traditional notions of fair play and substantial justice." *Johnston*, 523 F.3d at 609 (quoting *Wilson*, 20 F.3d at 647)). The Fifth Circuit has explained:

> The "minimum contacts" inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it "reasonably anticipates being haled into court."[] The defendant "must not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'"[]

*McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (internal footnotes and citations omitted). "A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis v. Fresne*, 252 F.3d 352, 358–59 (5th Cir. 2001). "There are two types of 'minimum contacts': [(i)] those that give rise to specific personal jurisdiction and [(ii)] those that give rise to general personal jurisdiction." *Lewis,* 252 F.3d at 358. Because WeInfuse neither alleges general personal jurisdiction as to Endue nor briefs the same, the Court pretermits discussion of general personal jurisdiction.[2]

### A. Specific Personal Jurisdiction

Specific jurisdiction may exist "over a nonresident defendant whose contacts with the forum state are singular or sporadic only if the cause of action asserted arises out of or is related to those contacts." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (citing *McFadin*, 587 F.3d at 759). In other words, such jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel*

---

[2] "A court may assert general jurisdiction over [non-resident defendants] to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Establishing general jurisdiction is "difficult" and requires "extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required . . . . [V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 609–10 (quoting *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002)).

*& Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (internal quotation marks omitted). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotations omitted). The Supreme Court has explained that the specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (citation and internal quotation marks omitted). Specifically, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

### B. Burden Shifting

"Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Sangha*, 882 F.3d at 102 (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). The Fifth Circuit has explained:

> **The defendant must make a "compelling case."** *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In determining whether the exercise of jurisdiction is fair and reasonable, the court must balance: **(1)** the burden on the nonresident defendant of having to defend itself in the forum, **(2)** the interests of the forum state in the case, **(3)** the plaintiff's interest in obtaining convenient and effective relief, **(4)** the interstate judicial system's interest in the most efficient resolution of controversies, and **(5)** the shared interests of the states in furthering fundamental social policies. *Id.*; *see also Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

*Sangha*, 882 F.3d 96, 102 (emphasis added in bold).

### IV. ANALYSIS

### A. Whether the Court has Personal Jurisdiction Over Endue

The Parties dispute whether the Court has specific personal jurisdiction over Endue. Endue first argues that the Court lacks jurisdiction because (i) WeInfuse fails to allege any contacts

between Endue and Texas; (ii) Endue does not have minimum contacts with Texas; (iii) WeInfuse's claims do not arise out of or relate to any Endue contacts with Texas; and (iv) WeInfuse's allegations that Endue caused an injury in Texas are insufficient to meet the "minimum contacts" standard and are otherwise conclusory. (ECF No. 15 at 22-24). In response, WeInfuse asserts (i) it has asserted a prima facie case against Endue; (ii) it has met its jurisdictional burden in establishing Endue's minimum contacts with Texas; (iii) WeInfuse's claims arise out of those contacts Endue had with Texas; and (iv) it is fair and reasonable for the Court to exercise personal jurisdiction over Endue. (ECF No. 34 at 14-22).

The Fifth Circuit applies a three-step analysis to determine whether specific personal jurisdiction over a defendant exists:

> **(1)** whether the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; **(2)** whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and **(3)** whether the exercise of personal jurisdiction is fair and reasonable.

*Luv N' Care v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (quoting *Nuovo Pignone v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)) (emphasis added in bold); *see, e.g., McFadin*, 587 F.3d at 759 (discussing the same). Here, none of the factual allegations assert Endue purposely directed its activities toward Texas or purposely availed itself of the privileges of conducting activities in Texas. That is, the record does not support the first step of the above three-step analysis to determine whether specific jurisdiction over Endue exists.

Although WeInfuse concludes Endue "knowingly and improperly gained access to WeInfuse's Software" and "unlawfully obtained the Screenshot of the user interface," no factual allegations in WeInfuse's pleadings show Endue achieved those alleged actions by purposely directing its activities toward Texas. (ECF No. 34 at 15); (*see* ECF No. 10 at 4-5). WeInfuse argues

that Endue made a "false representation" that WeInfuse '[doesn't] do anything well'—a statement about the services WeInfuse provides from Texas, including to Texas clients." (ECF No. 34 at 15); (*see* ECF No. 10 at 4-5).[3] But, this appears to combine an alleged injury to an in-forum-state party (here, WeInfuse) with activity in the forum state, itself. That is, "mere injury to a forum resident is not a sufficient connection to the forum," for the purpose of determining personal jurisdiction. *Walden*, 571 U.S. at 290. WeInfuse attempts to distinguish *Walden* based on the facts of that case, (ECF No. 34 at 18), but the Court rejects WeInfuse's analysis. The Fifth Circuit has explained:

> [] *Walden* also emphasizes that ***it is the defendant's contacts with the forum state, and not just the plaintiff, that must drive the personal jurisdiction analysis.*** *Id.* at 285, 134 S. Ct. 1115 ***("[T]he plaintiff cannot be the only link between the defendant and the forum.***"); *id.* at 286, 134 S. Ct. 1115 ("A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum."). It is insufficient for the defendant to simply have knowledge of a plaintiffs' "strong forum connections." *Id.* at 289, 134 S. Ct. 1115. That is, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.* at 290, 134 S. Ct. 1115; *see also Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, ─── U.S. ───, 137 S. Ct. 1773, 1780, 198 L.Ed.2d 395 (2017) ("[T]here must be an affiliation between the forum and the underlying controversy, ***principally, an activity or an occurrence that takes place in the forum State*** and is therefore subject to the State's regulation.") (alteration in original omitted) (internal quotation marks and citation omitted).

*Def. Distributed v. Grewal*, 971 F.3d 485, 495 (5th Cir. 2020) (emphasis added in bold italics). No factual allegations in the record show Endue performed any activity related to WeInfuse's claims in Texas.

WeInfuse next directs the Court to *The Leader's Institute, LLC v. Jackson* to assert the Court has personal jurisdiction over Endue. No. 3:14-CV-3572-B, 2015 WL 4508424, at *11 (N.D. Tex. July 24, 2015). In *Jackson*, another district court determined it had personal jurisdiction over an out-of-forum-state defendant, Robert Jackson. The *Jackson* court explained, *inter alia*:

---

[3] WeInfuse alleges no factual allegations as to whether such representations were made in Texas or to Texas-based customers.

> Plaintiffs have shown that Jackson employed marks similar or identical to Plaintiffs' registered trademarks on websites specifically targeting Texas residents for purposes of procuring customers from TLI in Texas. From his long-standing business relationship with Plaintiffs, which ended shortly before the trademark violations allegedly began, the Court can infer that Jackson intended his alleged conduct to impact Plaintiffs in Texas—by diverting business from them to Magnovo—and to reach Plaintiffs' robust customer base in this forum. Indeed, during his time as an independent contractor with TLI, Jackson contacted numerous customers based in Texas, sold TLI's services to over twenty of these contacts, and traveled to Texas on at least eight occasions to teach workshops. These customers were comprised of a distinct group of individuals and entities: those in the market for corporate team building and leadership services.

2015 WL 4508424, at *10. However, unlike in *Jackson*, WeInfuse has asserted no factual allegations that Endue has employed a trademark similar or identical to WeInfuse's trademark—specifically targeting Texas residents or to procure customers in Texas. *Compare Jackson*, 2015 WL 4508424, at *10, *with* (ECF No. 10). at Unlike Robert Jackson in *Jackson*, no factual allegations show Endue had any specific contacts whatsoever with Texas that relate to its claims. (*See* ECF No. 10).[4] To the contrary, the record contains a declaration of Endue's CEO, which provides:

> There are currently no active Texas-based customers using Endue's software or that have otherwise entered into any agreements with Endue in connection with its software.
>
> Endue has never had a principal place of business in Texas. Endue does not have any physical presence, offices, or property in Texas. Endue has no employees in Texas. Endue does not have any phone numbers, mailing addresses, facsimile numbers, warehouses, bank accounts, or other assets in Texas.

---

[4] WeInfuse alleges in its briefing that:

> WeInfuse recently discovered that (a) Endue reached out to a Texas-based client and its executives and investors in connection with its startup efforts, and (b) reached out to others based in Texas about so-called "consulting agreements."

(ECF No. 34 at 16). The Court declines to consider the above as a part of its Rule 12(b)(2) analysis because the above is neither included as a pleading nor is otherwise supported by factual allegation relating to any claims. *See Getagadget, LLC v. Jet Creations Inc.*, No. 19-51019, 2022 WL 964204, at *4 (5th Cir. Mar. 30, 2022) ("Minimum contacts only permit a court to exercise specific jurisdiction over claims that *arise from* those contacts.") (emphasis in original).

> Endue has never applied for or received any loan, line of credit, or similar funding in Texas. Endue does not hold any specific licenses, registrations, or other certifications issued by the State of Texas, and Endue does not have a registered agent in Texas. While Endue has entered into an agreement with a Texas third-party billing company unrelated to the claims in this lawsuit, Endue has not entered into any other transactions, contracts, or agreements in Texas, or with anyone residing in Texas.

(ECF No. 15-1 at 3-4). WeInfuse offers no factual allegations to controvert the above. Although WeInfuse avers in its briefing that Endue's CEO expressed excitement about travelling to Texas and travelled to a Texas conference, (ECF No. 34 at 20-22), neither of those allegations, assuming *arguendo* the Court considered them as factual allegations, relate to WeInfuse's claims. *See Walk Haydel & Assocs.*, 517 F.3d at 243 (explaining jurisdiction exists when a nonresident defendant purposely directed activities to forum state **_and the litigation results from injuries that arise out of or relate to those activities_**); *see generally Goodyear Dunlop Tires Operations*, 564 U.S. at 919.

Here, WeInfuse is the only link between Endue and Texas as to WeInfuse's claims, which is insufficient for the Court to exercise personal jurisdiction over Endue. *See Walden*, 571 U.S. at 285 ("Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."). In light of the pleadings and record before the Court, the Court determines that WeInfuse has failed to make a prima facie showing that the Court has personal jurisdiction over Endue; WeInfuse has not met its burden of establishing jurisdiction. *See In re DePuy Orthopaedics*, 888 F.3d at 778. The Court concludes it lacks jurisdiction over Endue in this proceeding. The Court GRANTS Endue's Motion to Dismiss in accordance with Rule 12(b)(2).[5]

---

[5] The Court pretermits further discussion of specific personal jurisdiction as unnecessary.

### B. Whether WeInfuse has Failed to State a Claim Upon Which Relief Can Be Granted

In lieu of the Court's determination that it lacks jurisdiction over Endue, the Court pretermits discussion of WeInfuse's claims in the Rule 12(b)(6) context as unnecessary.

### V. LEAVE TO AMEND

WeInfuse's response requests for leave of Court to further amend its complaint. (ECF No. 34 at 35-36).[6] "Rule 15(a) requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir.2005)). "The district court is entrusted with the discretion to grant or deny a motion to amend[.]" *Marucci Sports*, 751 F.3d at 378. In deciding whether to grant or deny a motion to amend the Court "may consider a variety of factors including 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and **futility of the amendment**.'" *Marucci Sports*, 751 F.3d at 378 (internal citation omitted) (emphasis added in bold); *see also, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962) (enumerating the same). "Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'" *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009).

WeInfuse avers it "has discovered additional information, since it filed its live pleading, that can be pled and should be developed in discovery." (ECF No. 34 at 36). On June 13, 2024, WeInfuse filed a Plaintiff's Notice of Intent to File Supplemental Complaint, (ECF No. 48), which provides:

---

[6] WeInfuse has already amended its complaint once in Plaintiff's First Amended Complaint, which is the current live pleading. (ECF No. 10).

> WeInfuse hopes to complete its investigation in time to file the Supplemental Complaint on or before June 30, 2024. In any event, WeInfuse will provide a further status update to the Court by that date.

(ECF No. 48 at 2). WeInfuse filed no leave to supplement its complaint or "Supplemental Complaint" on or before June 30, 2024. However, on July 2, 2024, WeInfuse filed a Plaintiff's First Status Report, which includes a non-party's cease and desist letter to Endue that is unrelated to any claim before the Court. (ECF No. 50).

Assuming *arguendo* the Court treated these filings as containing potential factual allegations, neither of these filings refer to additional factual, nonconclusory allegations as to WeInfuse's claims. (ECF Nos. 48; 50). WeInfuse attaches no further amended complaint to any document. *See* N.D. Tex. Loc. R. 15.1 ("When a party files by electronic means a motion for leave to file an amended pleading, *the party must attach the proposed amended pleading to the motion as an exhibit*.") (emphasis added). WeInfuse gives no indication that it did not plead its best case in Plaintiff's First Amended Complaint, (ECF No. 10), or a corresponding more definite statement. WeInfuse does not state other potential factual allegations it would have included in a second amended complaint. *See generally Brewster*, 587 F.3d at 768 (collecting cases). The Court determines further amendment would be futile. The Court determines WeInfuse has pleaded its best case. For those reasons, the Court DENIES WeInfuse's requested leave to further amend the Complaint.

(*This space left blank intentionally*).

## VI.   CONCLUSION

For the reasons above, the Court GRANTS Endue's Motion to Dismiss all of WeInfuse's claims due to lack of jurisdiction. (ECF No. 15). The Court DENIES WeInfuse's request for leave to further amend Plaintiff's First Amended Complaint. The Court shall enter a separate final judgment as to the same. *See* Fed. R. Civ. P. 54; Fed R. Civ P. 58.

**SO ORDERED.**

24th day of July, 2024.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE